# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATTA,<br><br>　　　　　Petitioner/Defendant,<br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent/Plaintiff. | CASE NO. 11CR1100-LAB/13CV0016-LAB<br><br>**ORDER RE: HABEAS PETITION** |

On February 13, 2012, pursuant to a plea agreement he signed in June 2011, Matta was sentenced to 120 months in prison for importing heroin into the United States. (Doc. No. 23.) On January 3, 2013, he filed a motion to vacate that sentence under § 2255. The motion initiated a new civil case, 13 CV 16, but for some reason subsequent pleadings were only filed in the underlying criminal case. That explains, in part, the delay on the Court's end in issuing a final opinion once the motion was fully briefed. Monitoring chiefly the civil case, it failed to see that the United States filed an opposition to the motion and that Matta filed an objection. In any event, the briefing is final and Matta's motion is ready for a ruling. It is **DENIED**.

The essence of Matta's motion is that even though his plea agreement clearly specified that his crime carried "a minimum mandatory of ten (10) years in prison," he was duped into signing it on his counsel's representation that "he would be placed within an advisory guideline range of 46-57 months" and that she would ask for 37 months. (PA at 3; Pet. at 3–4.) After he was sentenced to 120 months, Matta claims he asked his counsel to file an appeal and instead she abandoned him. (Pet. at 6–7.)

/ /

The first half of that is absurd on its face.

The plea agreement itself specified that it "embodies the entire agreement between the parties and supersedes any other agreement, written or oral." (PA at 14.) It specified that Matta "has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect." (PA at 14.) It specified that Matta "has consulted with counsel and is satisfied with counsel's representation." (PA at 15.) It specified that Matta's guilty plea "is knowing and voluntary" and that "[n]o one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court." (PA at 5–6.) Most importantly, it specified that Matta's crime carried "a minimum mandatory of ten (10) years in prison." (PA at 3.) Matta initialed all pages of the plea agreement and signed the last page.

Then there is the transcript of Matta's change-of-plea hearing. When Judge Porter told him he faced a maximum sentence of life imprisonment and a minimum mandatory of ten years, he said he understood. (Plea Tr. at 6:2–7.) When she said "[t]he judge could impose that ten years even though . . . sentencing guidelines might recommend or advise a lower sentence," he said he understood. (Plea Tr. at 7:13–18.) When she asked Matta's counsel if there were any agreements beyond the four corners of the plea agreement, and asked Matta himself if he had any questions about the plea agreement, they both answered no. (Plea Tr. at 8:14–20, 9:12–14.) When she asked Matta if he initiated and signed the plea agreement, read it, and discussed it with his attorney, he answered yes. (Plea Tr. at 9:2–11.) When she asked him if he'd "been promised anything by anyone that's been a factor in your decision to plead guilty" he answered no. (Plea Tr. at 11:1–4.) Judge Porter made a factual finding that Matta "is pleading guilty both knowingly and voluntarily and that there is a factual basis to support his plea." (Plea Tr. at 15:1–6.)

Finally, Matta's sentencing. The Government's sentencing summary chart indicated a guideline range of 63 to 78 months, and because of the minimum mandatory sentence it recommended 120 months in custody. (Opp'n Br., Exh. 8.) Matta's counsel acknowledged that the minimum mandatory applied and that Matta knew this:

> I have gone over with Mr. Matta the fact that he is subject to a mandatory minimum and without the Government's recommendation for 5(K), we cannot breach that. We can't break that, rather. If we were in the position to be able to request a lower sentence, the sentence here that both Mr. Mata and I discussed we are requesting of the Court would be a 37-month sentence. (Sentencing Tr. at 4:13–19.)

She continued to say,

> Unfortunately, in this situation, he was arrested with just over a kilogram of heroin which subjects him to a 10-year minimum mandatory versus had it been just a little bit under a kilo, he would have been looking at a five-year minimum mandatory and would have been looking at a significantly less amount of time. He did sign a plea agreement in the hopes that he would be able to work with the Government. Unfortunately, due to a number of circumstances beyond his control, that did not come to fruition. The recommendation was not made . . . . Unfortunately, he finds himself in the criminal history category 2 subject to the 10-year minimum mandatory. I was hopeful that we would be able to find something to further discuss with Mr. Matta but at this point there was nothing. (Sentencing Tr. at 5:2–11.)

After Matta allocuted and asked for a lenient sentence, the Court was clear that its hands were tied:

> You know I can't do that, right? You know the way the sentencing law applies here. (Sentencing Tr. at 6:5–6.)

The Court even explained that it thought Matta's sentence was too severe.

> I cannot impose, absent a motion from the United States, a sentence of less than 120 months in this case. If there is a way to impose a lesser sentence, then I am on board with it. I think that's too much time, even given the circumstances here. Doesn't make great sense to me that a prior drunk driving catapults him into this category. I would not have sentenced 97 to 121 months. I think that's too long under all the circumstances of this case. (Sentencing Tr. at 9:9–16.)

Throughout, Matta gave no indication whatsoever that the sentence he was receiving was anything other than what he bargained for in the plea agreement and what was promised to him by his counsel. All of this is simply to say that the crux of Matta's motion, even before getting into the particulars of his claims, has all the appearances of being meritless.

But onto the claims themselves. The Government identifies six ineffective assistance of counsel claims in Matta's petition: (1) failure to secure his safety valve and minor role

eligibility; (2) misrepresentation of the sentence he may receive; (3) failure to communicate with him in a timely and effective manner; (4) failure to provide adequate representation during his presentence meeting; (5) failure to file a post-sentencing appeal; and (6) failure to object to the amount of heroin recovered in his vehicle. (Opp'n Br. at 17.) The Court reads his motion a bit differently. It identifies three issues—"Issue One," "Issue Two," and "Issue Three"—and it divides the first into "Issue One (a)," "Issue One (b)," and "Issue One (c)." That makes for five claims total, not all of which are ineffective assistance claims.

*First*, Matta claims that his counsel—who he refers to with the pronoun "he", even though he was represented by a woman—rendered ineffective assistance by failing to file a notice of appeal. (Pet. at 9.) *Second*, he claims that his counsel was ineffective for failing to advise him of "the relevant law and facts in relation to his guilty plea, sentencing, and plea agreement waiver during the plea negotiation process," which resulted in an involuntary and unknowing guilty plea. (Pet. at 12.) *Third*, he claims that counsel was ineffective for failing to explain, and request a reduction based on, safety valve and minor role. (Pet. at 15.) *Fourth*, Matta claims that the Court erred when it failed to conduct a hearing to explore a pre-sentencing conflict of interest between Matta and his counsel. (Pet. at 18.) *Fifth*, Matta claims his counsel was ineffective "when he failed to advise Petitioner that he was pleading guilty to an unlawful sentence"; the sentence was unlawful, Matta argues, because weight of the heroin he imported was miscalculated. (Pet. at 21.)

The Government's first crack at Matta's claims is to argue that he can't bring them in the first place because he waived his right to appeal or collaterally attack his conviction and sentence. (Opp'n Br. at 12–15.) It's not so simple. As the Government is aware, a waiver doesn't extend to ineffective assistance claims where the complaint is that the guilty plea wasn't knowing or voluntary or that the waiver itself was involuntary. *See United States v. Jeronimo*, 398 F.3d 1149, 1156 n.4 (9th Cir. 2005); *Washington v. Lampert*, 422 F.3d 864, 870–71 (9th Cir. 2005). The Government tries to argue that "Petitioner does not contend that the Plea Agreement was made without knowledge or was involuntary," but at least one of Matta's claims contends exactly that. (Pet. at 12.) There is an even bigger problem,

though. Perhaps in an attempt to incorporate the law of *Jeronimo* and *Lampert* into its plea agreement, the Government allowed for Matta to bring *any* kind of ineffective assistance claim:

> In exchange for the Government's concessions in this plea agreement, Defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel. The Defendant also waives, to the full extent of the law, any right to appeal or to collaterally attack her sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, unless the Court imposes a custodial sentence above the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing. (PA at 11.)

As the Court reads this language, it is actually broader than the caselaw requires, because it allows for an ineffective assistance claim without any limitation on the nature of that claim. That means the Court has to rule on Matta's ineffective assistance claims on their merits.

Three of those claims can be denied outright. First, the record from the change-of-plea and sentencing hearings could not be more clear that Matta was advised of the nature and consequences of his guilty plea and entered that plea voluntarily and knowingly. That claim—"Issue One (b)—is **DENIED**. Second, counsel couldn't have been ineffective for failing to request a safety valve reduction because Matta was not safety-valve eligible. (Sentencing Tr. at 9:4–5; PSR at 10.) As for his counsel's failure to request a minor role reduction, the request was actually made and the Court rejected it. (Sentencing Tr. at 7:4–8:25.) The rejection was justified because Matta wasn't substantially less culpable than the average participate in his crime. *See United States v. Hurtado*, 2014 WL 3720241 (9th Cir. July 29, 2014). So, this claim—"Issue One (c)"—is also **DENIED**. Third, Matta's claim that his counsel failed to object to an unlawful sentence because the weight of the heroin he imported wrongfully included its packaging—"Issue Three"—is **DENIED**. Even if the plea agreement's weight of 1.34 kilograms is off, the lab results confirm that its weight was 1.087 kilograms.

/ /

That leaves two claims. The first of these remaining claims is "Issue Two," namely that the Court erred in failing to address a conflict of interest between Matta and his counsel. This claim is **DENIED**. First, because it's not an ineffective assistance claim, it's subject to Matta's waiver of the right to appeal or collaterally attack his conviction and sentence. That waiver is clear in the plea agreement, it was openly discussed during his change-of-plea hearing, and it was confirmed during his sentencing. (PA at 11; Plea Tr. at 9:15–10:16; Sentencing Tr. at 12:19.) Second, it's meritless anyway. When Matta requested new counsel, the Court heard from him, discussed the issue with him, and he elected to stay with his counsel over the Court's statement, "Now, again, it's up to you. If you want a different lawyer, I'll get you a different lawyer." (Status Tr. at 11:2–3.) The Court recommended against a substitution of attorney, but the decision was ultimately Matta's and he withdrew his request for new counsel. (Status Tr. at 22–24.)

The remaining claim, "Issue One (a)," is the weightiest. Matta argues that his counsel was ineffective for not filing a notice of appeal when he asked her to. (Pet. at 9.) The Government has no substantive rebuttal to this, and simply responds, "Petitioner waived his right to appeal in his plea agreement." (Opp'n Br. at 21.) The problem with that argument, which the Court noted above, is that the plea agreement expressly allows for Matta to appeal or collaterally attack his conviction and sentence "based on a claim of ineffective assistance of counsel," without qualification. And this is an ineffective assistance of counsel claim. There is one more problem. As one district court has put it, "[e]ven where a defendant has expressly waived his right to appeal, it is deficient performance for counsel not to appeal at the request of her client, and a defendant is prejudiced by his loss of the right to appeal, regardless of the likelihood of success." *Smith v. United States*, 2014 WL 2810027 at *5 (N.D. Cal. June 18, 2014) (citing *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005)). *See also Contreras-Sanchez v. United States*, 2014 WL 202617 at *5 (S.D. Cal. Jan. 16, 2014) ("The Ninth Circuit in *Sandoval-Lopez* ruled that when a petitioner claims that he asked his attorney to file a notice of appeal and the attorney fails to do so, the district court cannot dismiss the motion without an evidentiary hearing, even if there was a valid

waiver of the right to appeal, Petitioner did not appear to have a nonfrivolous grounds for appeal, and a new trial after a successful appeal would likely result in a longer sentence.").

One way to get around *Sandoval-Lopez*, as the Court did in *Contreras-Sanchez*, is to say that *Sandoval-Lopez* didn't address "the impact of a waiver of *collateral attack* rights" but instead "the impact that a petitioner's chance of success on appeal or waiver of appeal had on the *merits* of an ineffective assistance of counsel claim, and not the question of whether such a claim could be brought in the first place." *Contreras-Sanchez*, 2014 WL 202617 at *6. *See also United States v. Barraza*, 2014 WL 3867423 at *4 (E.D. Cal. Aug. 6, 2014) ("By contrast, five district judges have enforced collateral attack waivers where the prisoner claimed counsel refused to file a notice of appeal."). The difficulty the Court runs into, again, is that the waiver in this case expressly excluded "a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (PA at 11.) The waiver in *Contreras-Sanchez*, by contrast, omitted that. *Contreras-Sanchez*, 2014 WL 202617 at *3.

It appears the Government's only argument against Matta's ineffective assistance of counsel claim arising out his counsel's alleged failure to file an appeal is that the claim is waived. For the reasons given, the Court finds that argument unsatisfying. In part this is because of *Sandoval-Lopez*, although in much greater part it is because of the words of the plea agreement itself. This last claim of Matta's therefore deserves more. Within two weeks of the date this Order is entered, the Government should inform the Court whether it wishes to proceed to an evidentiary hearing on Matta's claim, or else not oppose it and let the Court vacate and reenter judgment so he can appeal, either "to free itself from the restraint of the plea bargain, or because getting the appeal dismissed would be less work than an evidentiary hearing." Alternatively, the Government may do neither and, if it believes the Court is mistaken in its analysis above, it may explain why.

**IT IS SO ORDERED**.

DATED: September 12, 2014

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge